SARAH SPRATT, ADMINISTRATRIX OF JAMES SPRATT, APPELLANT,
*vs.* THOMAS SPRATT, APPELLEE.

The second section of the act of congress " to establish an uniform system of naturalization," passed in 1802, requires that every person desirous of being naturalized, shall make report of himself to the clerk of the district court of the district where he shall arrive, or some other court of record in the United States; which report is to be recorded, and a certificate of the same given to such alien; and " which certificate shall be exhibited to the court by every alien who may arrive in the United States after the passing of the act, on his application to be naturalized; as evidence of the time of his arrival within the United States." James Spratt arrived in the United States after the passing of this act, and was under the obligation to report himself according to its provisions. The law does not require that the report shall have been made *five years before* the application for naturalization. The third condition of the first section of the law, which declares that the court admitting an alien to become a citizen " shall be satisfied that he has resided five years in the United States," &c. does not prescribe the evidence which shall be satisfactory. The report is required by the law to be exhibited on the application for naturalization, as evidence of the time of arrival in the United States. The law does not say the report shall be the sole evidence; nor does it require that the alien shall report himself within any limited time after arrival. Five years may intervene between the time of arrival and the report, and yet the report be valid. The report is undoubtedly conclusive evidence of the arrival; but it is not made by the law the only evidence of that fact. [406]

James Spratt was admitted a citizen of the United States by the circuit court for the county of Washington, in the district of Columbia, and obtained a certificate of the same in the usual form. The act of the court admitting James Spratt as a citizen, was a judgment of the circuit court; and this court cannot look behind it, and inquire on what testimony it was pronounced. [406]

The various acts on the subject of naturalization, submit the decision upon the right of aliens to courts of record. They are to receive testimony, to compare it with the law, and to judge on both law and fact. If their judgment is entered on record, in legal form, it closes all inquiry; and like any other judgment, is complete evidence of its own validity. [408]

The act of the legislature of Maryland of 1791, which authorises the descent to alien heirs of lands held by aliens under " deed or will," in that part of the district of Columbia which was ceded to the United States by the state of Maryland; does not authorise the descent to such heirs of land, in that part of the district, which was purchased by an alien at a sale made under an order of the court of chancery, and for which no deed was executed before the purchaser became a citizen of the United States, or before his decease. [408]

THIS case came before the court from the circuit court for the county of Washington, in the district of Columbia, on a case stated in that court.

[Spratt *vs.* Spratt.]

The plaintiff, Thomas Spratt, instituted in the circuit court an action of replevin, the defendant, as the administratrix of James Spratt, having levied a distress on the property of the plaintiff, for rent claimed to be due for a house occupied by him in the city of Washington, and to which he claimed title in himself, and in the brothers and sisters of James Spratt, deceased. It was agreed, by the counsel, that the title to the house and lot. of ground upon which the same is erected, should be determined upon the following stated facts:

Thomas Spratt, Andrew Spratt, Sarah Spratt and Catharine Spratt, are brothers and sisters of the whole blood of James Spratt the intestate, and are natives of Ireland, and subjects of the king of Great Britain, and were not, before the institution of this suit, naturalized as citizens of the United States; and but one of them, Thomas Spratt, and the deceased, James Spratt, ever came to the United States. James Spratt was also a native of Ireland, and came to the United States some time before the 18th of June 1812; from which time he continued to reside in the United States until March 1824, when he died without issue, leaving Sarah Spratt his widow, who became the administratrix to his estate.

James Spratt, on the 17th of May 1817, appeared in the circuit court of the district of Columbia for the county of Washington, and before the court made the declaration on oath required by the first condition of the first section of the act to establish an uniform system of naturalization, &c. passed the 14th of April 1802; which proceeding was recorded in the minutes of the court's proceedings, and a certificate thereof, under the hand of the clerk and the seal of the court, on the same day given to James Spratt; he having, on the 14th of April then next preceding, made report of himself to the clerk of the circuit court, as stated in the certificate; which report was recorded in the office of the said clerk, and the certificate of such report and registry, and of the declaration on oath, having been granted by the clerk to him. On the 11th of October 1821, James Spratt made application to the said circuit court to be admitted a citizen of the United States; and was, on the same day, ad-

mitted by the court to become a citizen of the United States, as appears by the record of the proceedings of the court, upon the matter of the said application: a certificate whereof, under the hand of the clerk, and the seal of the court, was afterwards given by the clerk to him, and is part of the case.

Sarah Spratt was also a native of Ireland, and a native-born subject of the king of England; she emigrated to the United States before James Spratt, and has continually, from the time of her emigration, resided in the United States; and before his naturalization was lawfully married to him, and lived with him as his lawful wife, from their marriage till his death in March 1824, and was his wife at and before the time of his said naturalization; but has not been naturalized as a citizen of the United States pursuant to the act of congress, unless so naturalized by the naturalization of her husband.

On the 9th of June 1825, the plaintiff and his brothers and sisters, claiming as heirs at law of James Spratt, brought their action of ejectment in this court, against Sarah Spratt, to recover possession of sundry of the lands and tenements whereof James Spratt died seised in fee, not including the messuage and tenement in this suit: in which suit (the same having been duly prosecuted and put to issue) such proceedings were had, that the title of Thomas Spratt was duly submitted to the consideration and judgment of the court, upon a case agreed and stated between the parties, to be taken and considered as a special verdict; upon which the court gave judgment for Sarah Spratt; whereupon a writ of error was sued out to the supreme court of the United States, where the judgment was re-examined, as appears in 1 Peters, 343; which is part of the case.

In the matter of a suit in the circuit court of the county of Washington, by one of the creditors of Simon Meade, deceased, Joseph Forrest was appointed to make sale of certain real estate of Simon Meade, and after having set up the same for public sale, to return the sale to the court for confirmation; and having on the 21st day of May 1821, set

up the estate on terms specified, by which the purchase money was to be paid in four instalments, at six, twelve, eighteen and twenty-four months, and that a conveyance of the property should be made to the purchaser on the ratification of the sale by the court. The house and lot in question, in this case, were purchased by James Spratt; and on the 21st October 1821, the trustee returned the sale to the court. On the 24th of December 1822, an interlocutory order was made for the ratification of the report of the sale; and in January 1824, a final ratification of the sale was passed by the court.

James Spratt, after his naturalization, and not before, paid the purchase money for the property by the instalments, with interest; but no deed of conveyance of the same was ever executed to him, and he died invested with no other title to the premises in controversy but what he acquired by the sale at auction, the written memorandum, report and ratification thereof, and the payment of the purchase money.

In the statement of the case thus agreed, there was inserted the following memorandum; which was signed by the counsel for the parties in the cause.

"It is understood, however, that the plaintiff does not admit, but denies, that the proceeding and evidence touching the naturalization of James Spratt, or any part of the same, do purport to be, or to show a due and legal naturalization of James Spratt as a citizen of the United States; and maintains that the manner and process of such pretended naturalization appears from such proceedings and evidence to have been irregular and void; unless such proceedings and evidence, or any part of the same, be held by the court to be conclusive in this case, that he was duly and legally naturalized as such citizen. While the defendant and avowant on the other hand maintains, that no defect or irregularity appears in the manner and process of such naturalization; that the manner and process of the same in its preliminary stages are not examinable in this case; but that the admission of James Spratt to become a citizen of the United States, as it appears in the record and certificate thereof, is, either substantively or in connexion with the other evidence

[Spratt *vs.* Spratt.]

thereof, conclusive of his due naturalization as such citizen: all which matters are understood and agreed to be involved in the question of title, and to be accordingly reserved for the consideration and judgment of the court upon the premises."

The declaration for naturalization made by James Spratt, was in the following terms :

" James Spratt, a native of Ireland, aged about twenty-six years, bearing allegiance to the king of Great Britain and Ireland, who emigrated from Ireland, and arrived in the United States on the 1st of June 1812, and intends to reside within the jurisdiction and under the government of the United States, makes report of himself for naturalization according to the acts of congress in that case made and provided, the 14th of April, anno domini 1817, in the clerk's office of the circuit court of the district of Columbia for the county of Washington : and on the 14th of May 1817, the said James Spratt personally appeared in open court, and declared on oath, that it is bona fide his intention to become a citizen of the United States, and to renounce all allegiance and fidelity to every foreign prince," &c.

W. BRENT, *Clerk.*

The record of the proceedings of the circuit court on the naturalization of James Spratt is in the following terms :

" At a circuit court of the district of Columbia, begun and held in and for the county of Washington, at the city of Washington, on the first Monday of October, being the 1st day of the same month, in the year of our lord 1821, and of the independence of the United States the forty-sixth.

" James Spratt, a native of Ireland, aged about thirty years, having heretofore, to wit, on the 14th of May 1817, declared, on oath, in open court, that it was bona fide his intention to become a citizen of the United States, and to renounce for ever all allegiance and fidelity to every foreign prince, potentate, state or sovereignty whatever, and particularly to the king of the united kingdom of Great Britain and Ireland.

" And it now appearing to the satisfaction of the court by

the testimony of two witnesses, citizens of the United States, to wit, Samuel N. Smallwood, and Jonathan Prout, that the said James Spratt hath resided within the limits and under the jurisdiction of the United States for five years at least last past, and within the county of Washington one year at least last past, and that during the whole of that time he hath behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same—the said James Spratt is thereupon admitted a citizen of the United States; having taken the oath ' that he will support the constitution of the United States; and that he doth absolutely and entirely renounce and abjure all allegiance and fidelity to every foreign prince, potentate, state or sovereignty whatever; and particularly to the king of the united kingdom of Great Britain and Ireland, to whom he was before a subject.' 11th of October 1821."

A certificate in due form, corresponding with this record, was given to James Spratt.

For the appellant, it was contended;

1. That the admission of said James Spratt to citizenship, as stated in the record, was legal.

2. That whether regular or not, it is conclusive, as the judgment of a court upon a subject within its jurisdiction.

3. That whether so or not, the parties are concluded by the admission in the former case stated.

4. That no deed or conveyance having ever passed to James Spratt in his life, the appellees could not inherit under the act of Maryland.

5. That if the Maryland law would entitle the appellees to inherit any estate but one executed by an actual conveyance, and the time when he acquired a right to the estate should be thought material; then it will be contended that he acquired such a right, not at the time of bidding, but either on his paying the purchase money, or on the ratification of the sale; both which events occurred after his naturalization.

[Spratt *vs.* Spratt.]

Mr Key and Mr Jones, for the appellant, argued; that the naturalization of Thomas Spratt had been regular, according to the requirements of the act of congress.

The law does not make the report made by the alien, and the register of his arrival, the only evidence of the period and fact of his arrival in the United States. Acts of congress, 22d of March 1816, July 30th, 1813. The court are to be satisfied of the facts, and are not excluded from receiving other evidence than the register. While it is admitted that this is the best evidence, it does not follow that it is the only evidence which can be received. The court are authorised to act on such evidence as will enable them to decide on the application for naturalization. One objection which is made is, that the place of the residence of Thomas Spratt is not stated in the proceedings. To this it is answered, that such proceedings are not to be examined critically. It would be dangerous to the property of numbers, if exceptions of this character were encouraged. But no part of the law makes the place of the residence of the alien material; except that he shall have resided for one year preceding the application. in the state where he shall apply to be naturalized.

The act of admission to citizenship by a court authorised to admit to naturalization, is of itself sufficient evidence of citizenship, without looking behind it. It is a judicial act of a court of competent jurisdiction, and upon which it has adjudicated. If, in the proceedings of the court, in a matter necessarily judicial; in which testimony has been adduced, upon which it has passed a judgment; and of which a record has been made by the proper officers; there has been any thing erroneous, the court should itself correct it: but until this is done, it is binding on all the world. Cited 7 Co. 420. 2 Peters, 157. 5 Cranch, 174. But a fair and full examination of the different provisions of the laws relative to naturalization, will show that the proceedings of the circuit court were entirely correct and legal.

The property in controversy, although purchased by Thomas Spratt before his naturalization, was not held by deed; no conveyance having been made to him of the same even up to the time of his death.

[Spratt vs. Spratt.]

The right of a foreigner thus to take lands, depends on the particular words of the statute; and the case must be one within its provisions, or it will not operate. The terms of it are in reference to lands within that part of the district of Columbia which was ceded to the United States, held by aliens "under deed or will, hereafter to be made." Thus the provisions are limited to lands acquired or held by one of this description of titles.

The bid of Thomas Spratt acquired for him an equitable interest in the property; and he became a trustee, not for his foreign heirs, but for his wife, who by his subsequent naturalization, became a citizen. The law did not intend that such an interest should go to his foreign heirs.

There is good reason why the law of Maryland should confine the mode of taking to an actual, executed, legal title. Equitable interests in land are sources of infinite confusion. In Maryland, in 1793, they were not subject to execution for debt; and have been made so in 1810. Thus, a foreigner, under the construction claimed, would take an equitable title to land, having all the benefits of it, and it would not be subject to the claims of his creditors.

As to the liability to execution of equitable interests in lands. Cited 3 Johns. C. R. 316. 1 Caines's Cases, 46. 1 Murph. Rep. 383. 18 Johns. 94. 4 Har. and M'Hen, 533. 5 Johns. 335. 4 Johns. 41. 7 Johns. 206.

By the bid for the property no absolute title was acquired. The whole proceedings of the trustee were subject to examination by the court, and required its confirmation. Thus, by the case, until 1824, when the sale was finally ratified, the title of the purchaser was not complete, and the deed, then to be executed according to the decree, would not relate back to the time of the sale.

Mr Coxe, for the defendant.

Whether James Spratt was actually naturalized depends upon a proper construction of the act of April 14th, 1802.

It is contended, that the certificate is essentially defective under the provisions of this law.

[Spratt *vs.* Spratt.]

1. It does not ascertain the place of his intended settlement.

2. It was not made five years anterior to the 11th of October 1821. The act requires every person being an alien, who may arrive in the United States subsequent to its passage, to report such his arrival.

This certificate is to be exhibited by such alien on his application to be naturalized, as evidence of the time of his arrival within the United States. It is not required that the certificate should set forth the period of his arrival; but the meaning of the act is, that the date of such certificate shall be considered as that of the arrival.

The act of 1790 contained no provision for a previous declaration of an intention to become a citizen. All that was to be done, was to be done at the time of naturalization. The act of 1795 required such a declaration; it was to be made three years before he could be naturalized, and must set forth a residence of five years. The act of 1798 required this declaration to be made five years before the admission, and that he should make an averment of fourteen years residence before his application. The act of 1802 is applicable to those who were then within the United States, and had taken the preliminary steps. This act has been much considered here, as well as elsewhere. In this district, after solemn argument, the point has been ruled in accordance with the present judgment of the court. The circuit court of Pennsylvania gave the same construction to the law. 1 Peters's C. C. R. 457.

As to the argument, that the record is conclusive as to the right: It may be urged, that several of the acts of congress expressly negative this; if the pre-requisites of the statute are not complied with, the certificate is a nullity.

There is great danger in considering these certificates as conclusive, from the number of courts who are authorised under the law to issue them. If those who are to issue them may omit any one, of these requisites, they may omit all. Persons who have never been in the United States may obtain them. Persons may procure them, immediately on their arrival here.

This is not a judicial act, but one purely ministerial.    3 T. R. 126. Toller, 128.

The powers to admit to the rights of citizenship have been uniformly vested in, and exercised by state-courts, under the authority of congress.    But congress cannot vest any part of the judicial power of the United States in state tribunals. 1 Wheat. 304, 330. Martin vs. Hunter's Lessee, 5 Wheat. 27.

There are no parties.    All is ex parte.    No one can remove the proceedings by writ of error, certiorari, or in any other manner.    No one can oppose the act of granting the evidence of naturalization.    If ministerial: the proceedings must, on the face of them, show that they were correct. If the exercise of a judicial power : still it must appear that the court had jurisdiction; not only over the subject matter, but over the party, in the circumstances in which he stood.

This doctrine is fully laid down in Rose vs. Himely, 4 Cranch, 268, and the case of Griffith vs. Frazier, 8 Cranch, 1, 22, 8.    Walker vs. Turner, 9 Wheat. 541.    Cited also, 1 Paine, 55.

The next objection is, that the plaintiff cannot recover, because this is a mere equitable estate.

It cannot be questioned, but that as well by the common law as by the general statutes of descent of Maryland, equitable estates descend precisely as do legal.

Is this equitable estate embraced within the sixth section of the act of Maryland of December 19, 1791? Burch's Dig. 221.    It provides, " that any foreigner may, by deed or will, hereafter to be made, take and hold lands," &c.    The law recognizes two modes of acquiring lands—descent and purchase.    In general, the only modes of acquiring lands by purchase, are by deed, or will.    When an agreement of purchase is made, the party is considered in equity as the owner, because he is in equity entitled to a deed.    Whether the deed be, or be not in fact executed, it is by and through the deed that the estate is his.    A deed actually executed under one law passes no title, unless recorded within the time stipulated; but it confers upon the grantee a right to come into chancery to have it recorded; which, when ob-

tained, relates back, as between the parties, to the date of the agreement. Mary. Laws, 1766, c. 14, sec. 2; 1785, c. 72, sec. 12.

In equity, James Spratt was entitled to a deed from the moment the sale was made, provided it was ratified. Equity will consider that as done which ought to have been done. Sugd. 40, 353.   13 Ves. 517.   2 Cox, 231

Mr Chief Justice MARSHALL delivered the opinion of the court.

This case depends entirely on the title of the defendant in error to the premises in the avowry mentioned, who is one of the brothers and heirs of James Spratt deceased.

James Spratt was a native of Ireland, who arrived in the United States previous to the 18th of June 1812, and resided therein until his death.   On the 14th of April in the year 1817, he made report of himself to the clerk of the circuit court of the United States for the district of Columbia, in the county of Washington, which report was recorded; and, on the 17th of May thereafter, he appeared in the same court, and made the declaration on oath required by the first condition of the first section of the act " to establish an uniform rule of naturalization," &c. passed the 14th of April 1802; which proceeding was recorded, and a certificate thereof granted in the following words :

" District of Columbia, to wit: James Spratt, a native of Ireland, aged about twenty-six years, bearing allegiance to the king of Great Britain and Ireland, who emigrated from Ireland and arrived in the United States on the 1st of June 1812, and intends to reside within the jurisdiction and under the government of the United States, makes report of himself for naturalization according to the acts of congress in that case made and provided, the 14th of April anno domini 1817, in the clerk's office of the circuit court of the district of Columbia, for the county of Washington: and on the 14th of May 1817, the said James Spratt personally appeared in open court, and declared on oath, that it is his intention to become a citizen of the United States, and to

renounce all allegiance and fidelity to every foreign prince," &c.

This certificate was given under the hand and seal of the clerk. On the 11th of October 1821, James Spratt again appeared in open court, and took the oath required by law, and was admitted as a citizen. The certificate of his admission states that the three first conditions required by the act of the 14th of April 1802 had been complied with.

The said James Spratt intermarried with the plaintiff in error, Sarah Spratt, and departed this life in March 1824, without issue, and intestate. The plaintiff in replevin is a native born subject of the king of Great Britain and Ireland, and was not naturalized at the time of the institution of this suit.

In the year 1791, the state of Maryland passed an act entitled " an act concerning the territory of Columbia and the city of Washington;" the sixth section of which provides, " that any foreigner may, by deed or will, to be hereafter made, take and hold lands within that part of the said territory which lies within this state, in the same manner as if he was a citizen of this state ; and the same lands may be conveyed by him, and transmitted to, and be inherited by his heirs or relations, as if he and they were citizens of this state."

This act continues in force.

A decree was made by the circuit court for the sale of the estate of Simon Meade, deceased, to satisfy his creditors, on certain conditions therein specified. In pursuance of this decree, Joseph Forrest, who was appointed to carry the same into execution, did, on the 21st of May 1821, offer the real estate of the said Simon Meade for sale on the terms and conditions following, to wit : that the purchase money should be paid in four equal instalments, at six, twelve, eighteen, and twenty-four months, respectively, from the day of sale, with interest ; and that a conveyance of the property in fee simple should be made to the purchaser upon the ratification of the sale by the court, and the payment of all the said instalments of the purchase money, with interest. At this sale the said

James Spratt became the purchaser of the lot in the avowry mentioned. On the 15th of October 1821 the said Joseph Forrest made his report to the court; and on the 24th of December 1822, an interlocutory decree was made for confirming the sale; and on the 26th of January 1824, the final decree of confirmation was passed. No deed was executed during the life time of the said James Spratt. The bidding at the sale was made while the said James Spratt was an alien; but before any other step was taken he became a citizen.

Upon this state of facts, the circuit court gave judgment for the plaintiff in replevin; which judgment has been brought before this court by writ of error.

This cause has been argued very elaborately by counsel. It appears to the court to depend essentially on two questions.

1. Was James Spratt a citizen of the United States?

2. If he became a citizen, did the premises in the avowry mentioned pass to his alien relations who are his next of kin.

1. The first question depends on the act of 1802, for establishing an uniform rule of naturalization. The act declares that an alien may be admitted to become a citizen of the United States " on the following conditions, and not otherwise." The act then prescribes four conditions, the three first of which were applicable to James Spratt, and were literally observed.

The second section enacts, " that in addition to the directions aforesaid, all free white persons, being aliens, who may arrive in the United States after the passing of this act, shall, in order to become citizens of the United States, make registry and obtain certificates in the following manner, to wit: every person desirous of being naturalized, shall, if of the age of twenty-one years, make report of himself, &c." The law then directs what the contents of the report shall be; orders it to be recorded, and that a certificate thereof shall be granted to the person making the report: " which certificate shall be exhibited to the court by every alien who may arrive in the United States after the passing of this act, on his

application to be naturalized, as evidence of the time of his arrival within the United States."

As James Spratt arrived within the United States after the passage of the act of 1802, he is embraced by the second section of that act, and was under the necessity of reporting himself to the clerk, as that section requires. Must this report be made five years before he can be admitted as a citizen ?

The law does not in terms require it. The third condition of the first section provides, " that the court admitting such alien shall be satisfied that he has resided within the United States five years at least;" but does not prescribe the testimony which shall be satisfactory. This section was in force when James Spratt was admitted to become a citizen, and was applicable to his case. But the second section requires, in addition, that he shall report himself in the manner prescribed by that section; and requires that such report shall be exhibited, " on his application to be naturalized, as evidence of the time of his arrival within the United States." The law does not say that this report shall be the sole evidence, nor does it require that the alien shall report himself within any limited time after his arrival. Five years may intervene between his arrival and report, and yet the report will be valid. The report is undoubtedly conclusive evidence of the arrival, and must be so received by the court; but if the law intended to make it the only admissible evidence, and to exclude the proof which had been held sufficient, that intention ought to have been expressed. Yet the inference is very strong from the language of the act, that the time of arrival must be proved by this report; and that a court, about to admit an alien to the rights of citizenship, ought to require its production.

But is it any thing more than evidence which ought indeed to be required to satisfy the judgment of the court, but the want of which cannot annul that judgment ? The judgment has been rendered in a form which is unexceptionable. Can we look behind it, and inquire on what testimony it was pronounced ?

[Spratt *vs.* Spratt.]

The act does not require that the report shall be mentioned in the judgment of the court, or shall form a part of the certificate of citizenship. The judgment and certificate are valid, though they do not allude to it. This furnishes reason for the opinion, that the act directed this report as evidence for the court; but did not mean that the act of admitting the alien to become a citizen should be subject to revision at all times afterwards, and to be declared a nullity, if the report of arrival should not have been made five years previous to such admission.

The act of 1816, sec. 6, has, we think, considerable influence on this question. That act requires that the certificates of report and registry, required as evidence of the time of arrival in the United States, and of the declaration of intention to become a citizen, "shall be exhibited by every alien, on his application to be admitted a citizen of the United States, who shall have arrived within the limits and under the jurisdiction of the United States since the 18th day of June 1812; and shall each be recited at full length in the record of the court admitting such alien; and any pretended admission of an alien, who shall have arrived within the limits and under the jurisdiction of the United States since the said 18th day of June 1812, to be a citizen, after the promulgation of this act, without such recital of each certificate at full length, shall be of no validity."

James Spratt arrived within the United States previous to the 18th day of June 1812, and is consequently not within the provisions of the act of 1816.

This act is not intended to explain the act of 1802, but to add to its provisions. It prescribes that which the previous law did not require; and prescribes it for those aliens only who arrive within the United States after the 18th day of June 1812. It annuls the certificates of citizenship which may be granted to such aliens, without the requisite recitals; consequently, without this act, such certificates would have been valid. The law did not require the insertion of these recitals in the certificate of James Spratt.

The various acts upon the subject, submit the decision on the right of aliens to admission as citizens to courts of re-

cord. They are to receive testimony, to compare it with the law, and to judge on both law and fact. This judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form, to close all inquiry; and, like every other judgment, to be complete evidence of its own validity.

The inconvenience which might arise from this principle, has been pressed upon the court. But the inconvenience might be still greater, if the opposite opinion be established. It might be productive of great mischief, if, after the acquisition of property on the faith of his certificate, an individual might be exposed to the disabilities of an alien, on account of an error in the court, not apparent on the record of his admission. We are all of opinion, that James Spratt became a citizen of the United States on the 11th of October 1821.

2. Did the property mentioned in the avowry descend to his alien relations?

Since aliens are incapable of taking by descent, the answer to this question depends on the enabling act of the state of Maryland in the year 1791. That act does not enable aliens who may come into the district of Columbia to transmit all real estate, however acquired, to their alien relations by descent; but such lands only as shall be thereafter acquired by deed or will. This is a qualification of the power, which cannot be disregarded. The words are not senseless; and would not, we must suppose, have been inserted, had they not been intended to operate. They limit the capacity of an alien to inherit from his alien ancestor residing within this district, to lands which he had taken by deed or will. It is not for us to weigh the reasons which induced the legislature to impose this limitation. It is enough for a court of justice to know that the legislature has imposed it, and that it forms part of the law of the case.

If any equivalent act might be substituted for a deed, no such equivalent act can be found in this case. The auction at which this property was sold certainly took place while James Spratt was an alien; but that the sale was entirely conditional, and the purchase depended on the payment of

[Spratt *vs.* Spratt.]

the instalments, on the confirmation of the court, and the final decree of the court. Before the first instalment became due, before even the report was returned to the court, James Spratt became a citizen. He did not, therefore, while an alien, hold this land by a deed or by any title equivalent to a deed.

In a controversy between the alien heirs of James Spratt and Sarah Spratt, 1 Peters, 343, this court determined that land which James Spratt took and held under the enabling act of Maryland, descended to his alien heirs, but, that land which he took and held as a citizen, did not pass to those heirs.

The lot mentioned in the avowry comes, we think, within the last description ; and did not descent to the plaintiff in replevin.

The judgment of the circuit court is reversed, and the cause remanded, with directions to enter judgment for the avowant.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel ; on consideration whereof, it is ordered and adjudged by this court that the judgment of the said circuit court in this cause be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said circuit court with instructions to enter judgment in the said court for the avowant in said cause.