## STATE *v.* WHITTEMORE.

Perjury committed in a State court, relative to an application for naturalization under the laws of the United States, is indictable in the courts of the State as an offence against the State.

An indictment for perjury, alleging the making of a false affidavit, relative to an application for naturalization thereafter to be made to the police court of N., and that the affiant, at the time of making the affidavit, was sworn as a witness in support of said application, is sufficient; and it is unnecessary to aver that such application was afterwards made, or that the affidavit was used.

At the time when affidavits made out of court were universally received in the courts of this State upon the hearing of applications for naturalization, the making of a false affidavit to be used on such a hearing constituted the crime of perjury.

A court of record, without any clerk or other recording officer distinct from the judge of such court, is not competent under the U. S. act of April 14th, 1802, to naturalize aliens.*

---

* The legislature, by act of July 14, 1871, provided that "all persons

INDICTMENT, against George A. Whittemore, alleging that he, " on the twenty-eighth day of February, in the year of our Lord one thousand eight hundred and sixty-eight, at Hancock, in the county of Hillsborough aforesaid, giving his testimony in and by a certain writing called an affidavit, by him subscribed, as a witness relative to an application in writing thereafter to be made to the police court of the city of Nashua, to be admitted a citizen of the United States, by one Bernard E. Campbell, then an alien and a subject of Victoria, Queen of the United Kingdoms of Great Britain and Ireland, in his own proper person, on said 28th day of February, in the year aforesaid, at Hancock aforesaid, appeared, and was then and there sworn as such witness for said Bernard E. Campbell, and in support of said application, by and before Joseph Davis, a justice of the peace within and for said county ; and as such witness, he, the said George A. Whittemore, took his corporal oath concerning the matter set forth in said affidavit, pertaining to said application, and that the facts therein stated and by him subscribed were true, which said oath the said justice of the peace then and there had sufficient and competent authority to administer to him, the said George A. Whittemore, in that behalf." The indictment then proceeded to allege perjury in the respondent's affidavit relative to the residence of said Campbell.

A motion to quash having been denied, subject to exception, the respondent filed a demurrer which, for the purposes of this case, was overruled, subject to exception.

*Attorney-General, and Solicitor*, for the State.

*Morrison & Stanley*, for respondent.

SMITH, J.   I. The respondent contends " that the United States courts, and not the State courts, have jurisdiction of this indictment."

It is clear that this court has no jurisdiction of an indictment for perjury founded on the statute of the United States.   " Regarded as an offence against the United States, the courts of the general government have exclusive jurisdiction."   " This indictment is not attempted to be supported on the statute of the United States."   The only question is, whether the false swearing was an offence against the State of New Hampshire, punishable under the statute of the State.   So far as we know, there are but two decisions directly in point, and they are opposed to each other.   *Rump* v. *Com.*, 30 Pa. State 475, affirms, and *People* v. *Sweetman*, 3 Parker's Crim. Report N. Y. 358, denies, the jurisdiction of the State, to punish false swearing in naturalization proceedings pending in the State courts.   The question is not free from

---

*heretofore* naturalized by any police court, shall have and enjoy the same rights of voting, and holding and transmitting property, as if they had been naturalized by the supreme judicial court of this State."

REPORTER.

difficulty; but, after some doubt, we have concluded that the offence is punishable under the State law, although it may also be punishable under the United States law.

This case differs widely from *State* v. *Pike*, 15 N. H. 83, where it was held that the State courts have no jurisdiction over perjury committed before a U. S. commissioner in an examination under the U. S. bankrupt act. In that case, PARKER, C. J., said, pp. 86, 87, " The commissioners in bankruptcy not only derived no authority from this State, but they cannot be regarded as having exercised their offices by any permission, tacit or otherwise, from it. They derive their authority from a paramount law ; and this State could not object to the exercise by them of the duties of their office within its limits, if it had the disposition so to do. The offence, if committed as alleged, is clearly a crime under the laws of the United States." In the present case the oath was taken to be used in a proceeding in a State court, whose officers were appointed solely by State authority. The proceeding was, in one sense, under the laws of the United States ; but it was carried on in the State court only by the sufferance of the State. The State is under no obligation to furnish tribunals to aid in the administration of the naturalization laws of Congress, and may prohibit its courts from entertaining jurisdiction of applications for naturalization ; Stephens, Petitioner, 4 Gray 559 ; Beavins Petition 33 N. H. 89. False swearing in a State court, if allowed to go unpunished, has a tendency to impair the general usefulness of the tribunal and the dignity of the State. If it is to be optional with the prosecuting officers of the general government whether perjury in the State court is to be punished, we have the extraordinary spectacle of a State unable to punish an offence committed in its own courts. It would certainly seem almost as proper that the State courts should have power to punish a witness who has testified falsely before them in a naturalization case, as that they should have the power to punish contempt of court committed during the pendency of such a case.

It may be urged that the respondent, if punished under the State law, will still be liable to punishment under the U. S. law, and thus may be punished twice for the same offence. This objection is effectually disposed of by the following reasoning of GRIER, J., in *Moore* v. *Illinois*, 14 Howard U. S. 13, pp. 19, 20 : " An offence, in its legal signification, means the transgression of a law. A man may be compelled to make reparation in damages to the injured party, and may be liable also to punishment for a breach of the public peace in consequence of the same act ; and may be said, in common parlance, to be twice punished for the same offence. Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both. Thus, an assault upon the marshal of the United States, and hindering him in the execution of legal process, is a high offence against the United States, for which the perpetrator is liable to punishment ; and the same act may be also a gross breach of the peace

of the State, a riot, assault, or a murder, and subject the same person to a punishment, under the State laws, for a misdemeanor or felony. That either or both may, if they see fit, punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence, but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one, in bar to a conviction by the other; consequently, this court has decided, in the case of *Fox* v. *The State of Ohio*, 5 How. 432, that a State may punish the offence of uttering or passing false coin, as a cheat or fraud practised on its citizens; and, in the case of the *United States* v. *Marigold*, 9 How. 560, that Congress, in the proper exercise of its authority, may punish the same act as an offence against the United States."

II. The respondent takes the position that, as there was no cause pending in court at the time the affidavit was sworn to, the oath was extra-judicial, and the affiant cannot be guilty of perjury.

Bishop, in his work on Criminal Law (vol. 1, 3d ed., sec. 524), says that perjury, though technically a substantive offence, appears to be regarded in law rather in the light of an attempt, a corrupt attempt, to subvert justice in a judicial proceeding. This view is sustained by reference to reported decisions. Thus it is held, that it is perjury to swear falsely on a material point, although the jury do not give credit to the false oath (*Hamper's Case*, in K. B. 31 Eliz., reported 3 Leonard 230); or although the false testimony is given in an affidavit or deposition, which was not used upon the trial for which it was taken (*Rex* v. *Crossley*, 7 Term 315); or although there was some informality about the deposition or affidavit, which would have prevented its reception in evidence if it had been offered at the trial (*Regina* v. *Christian*, 1 Car. & Marsh. 388; *Rex* v. *Hailey*, 1 C. & P. 258; Sawyer, J., in *State* v. *Langley*, 34 N. H. 529, 533); or although the affidavit was insufficient to effect the purpose for which it was taken without additional proof, and it is not shown or averred that such additional proof was made (*State* v. *Dayton*, 3 Zabriskie 49); or although the judgment founded on the testimony of the false witness would be, or had been, reversed on error or appeal (*Regina* v. *Meek*, 9 C. & P. 513; see, also, *Van Steenbergh* v. *Kortz*, 10 Johns. 167; 2 Bishop on Crim. Law, sec. 983); and it is held, that a man commits perjury " who testifies to what he believes to be false, or what he knows nothing about, though it turns out to be true." (*Gurneis' Case* in the Star-chamber, 9 Jac. 1st, cited in 3 Coke's Inst. 166; *State* v. *Gates*, 17 N. H. 373; 1 Bishop on Crim. Law, sec. 524.) Most of these decisions obviously proceed upon the ground that the evil attempted, rather than the evil done, is the foundation, or essence, of the crime of perjury. " The perjury is complete at the time of swearing" (Littledale, J., in *Rex* v. *Hailey*, 1 C. & P. 258, 259). The indictable quality of the act depends not on facts transpiring after it is performed (see 1 Bishop on Crim. Law, sec. 664); " the guilt of the party cannot depend on the act of another person, when all that he had to do has been already consummated" (Lord Kenyon, C. J., in *Rex* v. *Crossley*, 7 Term. 315, 319).

December, 1870.] STATE v. WHITTEMORE. 249

From these views it seems to follow, that perjury may be committed in affidavits taken to be used in some judicial proceeding which the party taking them intends to institute, although he afterwards fails to carry out that intention. In *Rex* v. *White*, 1 Moody & Malkin 271, the respondent had filed a bill in chancery for an injunction, and had made the affidavit, on which the perjury was assigned, in support of the allegations in that bill. The affidavit could have been used only upon an *ex-parte* hearing on an application for the issuing of an injunction, before the time allowed the defendant for answering the bill had elapsed. It did not appear, and was not alleged, that such an application was ever made. Lord TENTERDEN, C. J., said, the affidavit " may well have been filed in anticipation of a contemplated motion for an injunction, on which it might have been used. Can it make any difference that it afterwards turns out that the motion is not made ? The crime, if any, is the same, morally, in each case ; and I certainly shall not, where the objection is open hereafter, hold it necessary to give proof of a fact which does not vary the conduct of the party in taking the oath in question." See, also, *King* v. *The Queen*, 14 Q. B. 31.

We do not understand that our statutes have narrowed the common law definition of perjury. The allegations, that the affidavit was given " relative to an application in writing thereafter to be made to the police court," &c., and that the affiant was sworn as a witness " in support of said application," sufficiently indicate that the respondent made the affidavit " with a view to its being received " in a judicial proceeding which he knew was in contemplation. He is in effect charged with " an attempt, by means of a wilfully false oath, to pervert the course of justice; " and such an " attempt " constitutes the crime of perjury. It was unnecessary to allege that the application was pending in the police court when the affidavit was sworn, or that such application was thereafter made, or that the affidavit was used.

III. The respondent contends that the affidavit taken out of court was not competent evidence, legally receivable in court to prove the residence of the applicant for naturalization ; and on this point he relies on the decision in 7 Hill 137. It was, however, the universal practice in the courts of this State, prior to the statute of June session, 1868, to receive such affidavits in naturalization cases; and, in view of this practice, we think the making of a false affidavit in February, 1868, constituted perjury, even if the practice was founded on an erroneous construction of the law.

To constitute " an attempt " punishable under the name of perjury, there must be not only an intent to pervert the course of justice, but also some act done which is in some degree adapted to accomplish the thing intended; (see 1 Bishop Crim. Law, 3d ed., sec. 668, *et seq.)* But a perfect adaptedness in the act performed to accomplish the intent is not requisite. If by the correct rule of law the affidavit could not properly have been received, it may be said that it was not completely adapted to the end; but as such an affidavit would in fact have been received as evidence at that time in all the courts of this State, the making of the false affidavit may be fairly characterized as " an.

act adapted in a very appreciable degree to accomplish the thing intended." If the courts of this State had been in the habit of receiving in evidence documents sworn to before a person who had no legal authority to administer oaths, this practice could not confer on that person authority to administer oaths, and no affiant sworn before that person would be guilty of perjury; *Regina* v. *Stone*, Dearsly C. C. 251. There would be no "oath." * But in the present case, the affidavit was sworn before a magistrate who had authority to administer oaths; and the only question now under consideration is, whether the taking of this false oath is such an attempt to pervert the course of justice as the law will take cognizance of and punish under the name of perjury.

IV. Our opinion thus far has proceeded upon the assumption that the police court of Nashua, in February, 1868, had jurisdiction of applications for naturalization. This jurisdiction is, however, questioned by the respondent. The law is clear that perjury is not committed, unless the court before which the false affidavit is to be used has jurisdiction of the case or subject matter—2 Bishop on Crim. Law, 3d ed., sec. 984. If the court has no jurisdiction, there is no "course of justice" to be perverted.

Had the police court of Nashua jurisdiction of applications for naturalization?

The constitution of the United States gives congress power "to establish a uniform rule of naturalization." Under this authority, congress has enacted the statute of April 14th, 1802, which prescribes the conditions upon which aliens may be admitted to be citizens of the United States. The first of those conditions allows the preliminary declaration to be made, and the final oath to be taken, before the supreme, superior, district, or circuit court of some one of the States. And the third section of the act is as follows: "And whereas doubts have arisen whether certain courts of record in some of the States are included within the description of district or circuit courts,—be it further enacted, that any court of record in any individual State, having common law jurisdiction, and a seal and clerk or prothonotary, shall be considered as a district court within the meaning of this act."

The question now presented must depend exclusively on the construction to be given to this act of congress. The State legislature may prohibit a State court, which comes within the class of tribunals described in the U. S. act, from exercising jurisdiction in naturalization cases. But the State cannot confer that jurisdiction on any tribunal which does not come within the terms of the U. S. statute. All statutes of this State, attempting to confer this power on the police court of Nashua, must therefore be laid out of the case; the solitary question being, whether that court has this power under the U. S. statute.

---

* See *State* v. *Langley*, 34 N. H. 532; *Douglass* v. *Douglass*, 38 N. H. 323; but see Gen. Stats., p. 64, sec. 14.                    REPORTER.

We think the police court of Nashua is a court of record having common law jurisdiction. See *ex-parte Gladhill*, 8 Metcalf 168. The counsel for the State are understood to admit that the police court of Nashua had no other clerk than the justice of said court. Is a court, without any clerk distinct from the judge of such court, a court " having a clerk " within the meaning of the act of congress?

This question was decided by Judges CURTIS and SPRAGUE in the U. S. circuit court for the district of Massachusetts, in October, 1854, in *ex-parte Michael Cregg*. The decision is reported in 2 Curtis U. S. Circuit Court Reports 98; also, in 17 Monthly Law Reporter 491. Cregg, the applicant for naturalization, had made his preliminary declaration of intention before the police court of Lynn. It was admitted that T. B. Newell, who signed the record of the declaration as clerk, was also judge of that police court, and that there was no other judge or clerk thereof at the time when the petitioner's declaration was made. Judges CURTIS and SPRAGUE denied Cregg's application, on the ground that the court before which he had made his previous declaration had no jurisdiction over naturalization cases. Judge CURTIS delivered an opinion, from which we make the following extract:

" We are of opinion the police court of Lynn, in which the justice was the recording officer, was not a court having a clerk within the meaning of the act of Congress. Certainly it does not come within the terms of that act, which clearly imply that there may be courts of record having a seal and common law jurisdiction, but no clerk or prothonotary, and that such courts are not included by the act. Yet how could this be if it were enough that the presiding justice should himself record the proceedings? A court of record necessarily requires some duly authorized person to record the proceedings. When the act speaks of courts of record, it speaks of courts whose proceedings are duly recorded by authorized persons; and when it says ' having a clerk or prothonotary,' it superadds the requirement that those proceedings shall be recorded by one of those officers. Unless the act be so construed, the requirement of a clerk or prothonotary would have no meaning. The act would have the same construction as if it were stricken out, because the words ' court of record' would carry with them the necessity of having the proceedings recorded by some one by authority of law. Nor do we consider it a vain and useless precaution to confine the power to naturalize aliens to courts in which one of those officers is found.

" In *Spratt* v. *Spratt*, 4 Peters 393, it was declared by the supreme court that the various acts on the subject of naturalization submit the right of aliens to courts of record. They are to receive testimony, to compare it with the law, and to judge on both law and fact. If their judgment is entered on record in legal form, it closes all inquiry, and, like any other judgment, is complete evidence of its own validity.

" The importance and value of this privilege of citizenship, which is conclusively and finally bestowed by the act of the court having jurisdiction, should prevent us from allowing less than its full weight to any requirement by congress which tends to restrict its power to those

tribunals which may be supposed most competent to exercise it.   And certainly there would seem to be no propriety in intrusting to a court which, in the exercise of its common law jurisdiction, cannot pass finally on any matter of law or fact affecting property to the amount of. one dollar, to make a final decision upon all questions of law or fact involved in an application for this great right, so as to make an absolute and unimpeachable grant of it.

"Now it is generally true, that a court of record, which is without a clerk or prothonotary, is not only a subordinate tribunal, but one to which a very narrow and comparatively unimportant jurisdiction is intrusted.

"It is also true, that there is more security that its proceedings will be correctly recorded and certified, if it has an officer charged with those particular duties.

"Congress might well have had both these things in view when it required the court to have such an officer.   And we are of opinion that a court not having such an officer, does not possess the authority conferred by the act."

The above is the only reported decision on this point that we have found.   We understand, however, that Judges CLIFFORD and CLARK have, within a few years, given a decision in the U. S. circuit court for the district of New Hampshire, directly opposed to the decision of Judges CURTIS and SPRAGUE.   We are informed by Judge CLARK that there was no written opinion, and we are not aware that the case has ever been, or is likely to be, reported.

If the point had been decided in the supreme court of the United States, this court would, of course, follow the decision there made. But the decisions of the U. S. circuit courts are not binding upon us (see PARKER, C. J., in *Kittredge* v. *Emerson,* 15 N. H. 227, 278, 279); and the conflicting rulings in the circuit courts leave us fully at liberty to decide according to our own views, giving due weight to the authority of each of the able tribunals which have passed upon the question. We do not perceive any satisfactory answer to the reasoning of Judge CURTIS, and we adopt his conclusion.   In our opinion, the police court of Nashua had no jurisdiction over applications for naturalization; and on this ground alone the demurrer must be sustained.

*Demurrer sustained.*