RAYMOND vs RAYMOND.

Opinion delivered October 3, 1896.

*1. Naturalization of Cherokee Citizen—Judgment—Collateral Attack.*

Appellee an adopted citizen of the Cherokee Nation proceeding under ¿ 43 the Act of 1890 relating to the United States Court in the Indian Territory, applied for and obtained naturaliza-tion by judgment of the United States Court in the Indian Territory. *Held*, That this judgment is conclusive and cannot be attacked collaterally.

*2. Judgment—Void—Collateral Attack.*

Appellant a Cherokee Indian abandoned appellee his wife, the day after their marriage. Thereafter appellant instituted suit in the Cherokee Court in the name of appellee for divorce. When said cause was called for trial, appellant confessed judg-ment against himself. Said suit was instituted without the knowledge or consent of appellee and appellee knew nothing of it until after judgment. *Held*, That the judgment of the divorce rendered by the Cherokee Court is void and may be attacked collaterally.

*3. Judgment of Tribal Court in the Indian Territory—Collateral Attack.*

The judgment of the tribal court in the Indian Territory will not be treated as a domestic judgment when attacked in the United States Court in the Indian Territory, and want of jurisdiction in the court rendering such judgment may be shown although such lack of jurisdiction does not appear on the face of the judgment.

Appeal from the United States Court for the North-ern District.

WM. M. SPRINGER, Judge.

Action by Eliza E. Raymond against Jesse B. Ray

mond for divorce and alimony.    Judgment for plaintiff.   De-
fendant appeals.    Affirmed.

The appellant, Jesse B. Raymond, a Cherokee Indian
by blood, and the appellee, Eliza E. Raymond, a white
woman and a citizen of the United States, were married in
the Cherokee Nation, where he resided, on the 5th of June,
1893, according to the laws and usages of said Nation, and
on the next day they separated without any apparent cause.
It was admitted by the parties to this suit that by such
marriage the appellee became an adopted citizen of the
Cherokee Nation, with all the rights and privileges accorded
to such citizens by the laws of that Nation, among which
was the right to sue and be sued in the Cherokee Courts.
On the 2d day of October, 1894, the appellee made applica-
tion to the United States Court in the Indian Territory for
naturalization as a citizen of the United States, which was
duly granted by said court.    On the 4th day of October,
1894, she instituted this suit at Muscogee, Indian Territory,
against the appellant, for divorce and alimony.   She alleges
that she is a citizen of the United States,  and a  resident of
the Cherokee Nation, and that the appellant is a citizen  and
a  resident of said Nation; that they were legally married on
the 5th day of June, 1893, and on the next day the appellant
abandoned her without cause; that on the——day of August,
1893,  he contracted a pretended marriage with one Miss
Carrie Buchanan; and that he has been living with her in
adultery since that date.   The appellee alleges that on the
28th of August, 1893, the appellant caused a suit to be in-
stituted in her name in the Circuit Court of Canadian district,
Cherokee Nation, against himself, for a divorce, on the
grounds that he had abandoned her for more than 12 months
next before the said 28th day of August, 1893; that he was
present at the calling of said cause, and answered and con-
fessed judgment; and that the divorce was then and there

granted on the same day. She alleges that said suit was brought without her knowledge or consent; that "the same was a fraud, a pretense, and a forgery," of which she had no notice until after the decree was rendered; that she never brought any suit against the appellant, nor authorized any one else to do so. She alleges that the appellant is the owner of a large amount of property, and asks for an allowance of money to pay the expenses of this suit, and for alimony. The appellant, answering the complaint of the appellee, admits the marriage and separation of the parties as alleged, and says that he is a Cherokee by blood, and that she became an adopted member of the tribe by such marriage; that suit for divorce was instituted in the name of the appellee on the 28th day of August, 1893, against him, in said Circuit Court of Canadian district; and that the divorce was granted by that court, which he alleges had jurisdiction of all matters relating to marriage and divorce,—and pleads said judgment in bar of this action. Appellant assails the jurisdiction of the United States Court in and for the Indian Territory to hear and determine this cause, and asserts that the judgment of naturalization in behalf of appellee is void and of no effect, and that appellee is still a member of the Cherokee tribe of Indians, and therefore cannot maintain her suit in said court. He makes no denial of any of the allegations in the appellee's pleadings, except to the effect that he is not the owner of a large amount of property, but is a poor man, and dependent on his own labor for support. By agreement of counsel the case was submitted to the court for the final determination of all the questions involved therein. The appellee put in evidence the judgment of naturalization accorded her on the 2d of October, 1894, in support of the jurisdiction of the United States Court over this case. The appellant offered in evidence the judgment of divorce rendered by the Circuit Court of Canadian district, Cherokee Nation, dated August 28, 1894, in bar of this action. The

court found that the parties were married on the 5th day of June, 1893; that the appellant abandoned his wife the next day without cause; that by said marriage she became an adopted citizen of said Nation; that the suit for divorce was instituted in the Cherokee Court in the name of the appellee, and the divorce was granted; that appellee denied that she authorized said suit, and that there was no proof to show that she did; that, when naturalization was accorded the appellee, she had not then been a citizen of the Cherokee Nation two years; that two years prior thereto she had been a citizen of the United States. The court thereupon ordered that the marriage between appellant and appellee be annulled and set aside, and found she was entitled to permanent alimony at the rate of $20 per month, and adjudged that appellant pay appellee's attorney's fees, in the sum of $200, and the costs of suit. Appeal was granted by the trial court, supersedeas bond given by appellant, and the case is in this court for determination.

*Hutchings & English*, for appellant.

1. No citizen of the United States can voluntarily throw off allegiance to it while he remains within its jurisdiction. It must be done with the consent of his government. The United States has permitted its citizens to marry into the five civilized tribes of Indians and become adopted citizens but they are no less citizens of the United States than are the citizens of any state in the union. The citizen must go beyond the jurisdiction of the country he owes allegiance to, to assume a new one. Curtis vs Parkison, 56 Fed. 556; Smith vs United States, 151 U. S. 50. Appellee was an adopted citizen of the Cherokee Nation and unless her relations to that government was afterwards changed, she could not sue another Cherokee citizen in any court other than those of that nation. There was nothing inconsistant with

(24)

her being a citizen of the United States and of the Cherokee Nation at one and the same time. Being a women her status was that of her husband. That was the law of nations and the law and custom of the Cherokee Nation. Webster on Citizenship 138, 295-300; Pequognot vs City of Detroit, 16 Fed. 216.

2. The judgment of naturalization is not conclusive, only prima facia. Webster on Citizenship 143. Even if it were otherwise, it can be attacked here, because it is the basis of this action and no attack on it is collateral. Fraud in its procurement, may *be set up. Peel vs January, 35 Ark. 331.

3. Appellant had been divorced from appellee by a court having jurisdiction of the persons and the subject matter. Appellee sought to show that she had never authorized the suit to be instituted. This she could not do except in a direct proceedings for that purpose. Christmas vs Russell, 5 Wall. 290; Harley vs Donoghu, 116 U. S. 1: Black on Judgments §§ 291, 513.

*Marcum & Fears*, for appellee.

No brief is on file for appellee.

KILGORE, J. (after stating the facts.) The assignment of errors submitted by the appellant raises two questions which must be determined in this case: First, if the naturalization papers awarded the appellee by the United States Court for the Indian Territory can be shown by the appellant to be void, then the United States District Court had no jurisdiction of the case; second, if the United States Court had jurisdiction, and yet if the judgment of the Cherokee Court granting the appellee a divorce is valid and binding, it is a bar to this action.

It is not necessary to discuss in this connection the right of a member of any Indian tribe to obtain naturalization, nor the essentials and procedure incident to that right. Section 43 of the act of 1890, to enlarge the jurisdiction of the United States Court in the Indian Territory, provides "that any member of any tribe or nation in the Indian Territory may apply to the United States Court therein to become a citizen of the United States, and such court shall have jurisdiction thereof, and shall hear and determine such application, as provided in the statutes of the United States." Before instituting this suit the appellee applied for and obtained naturalization by a judgment of the United States Court in the Indian Territory, under the section quoted. This judgment is set out in the record, and is in all respects complete and regular on its face. We are of the opinion that this judgment is conclusive of that question, and that it cannot be attacked, except by the government of the United States. This proposition seems to be supported by all the authorities to which we have had access. In the case of Spratt vs Spratt, 4 Pet. 393, the Supreme Court of the United States declares that "a judgment entered by a court of record in legal form in such cases closes all inquiry, and, like every other judgment, furnishes complete evidence of its own validity." This same question was fully discussed by the Supreme Court of Arkansas in State vs Penney, 10 Ark. 629. This was a case in which the defendant's right to hold the office of sheriff of Severe county, Ark., depended upon the naturalization of his father, and in which it was contended that the judgment of naturalization was void for many reasons, and that, the father not being a naturalized citizen, the defendant, his son, was an alien, and therefore could not hold the office of sheriff. The court held in that case that the judgment granting naturalization is conclusive of its own validity, and closes the door behind it to further inquiry. In Black, Judgm. § 804, it is said that under the

*Judgment of naturalization conclusive.*

laws of the United States the "record of the admission of an alien to citizenship in a court authorized to perform that act, reciting the facts which entitled the alien to such judgment, is a record which imports absolute verity, and its recitals cannot be questioned or contradicted in collateral proceedings." The authorities are nearly all to that effect, and it seems to be clearly established that no one but the United States can attack such judgment even in a direct proceeding. It is scarcely necessary to say in this connection that a direct proceeding is one instituted by parties or privies for the purpose of annulling and setting aside a judgment or decree. The appellant in this case cites Webst. Citizenship, p. 143, in support of his theory in regard to the judgment of naturalization in favor of the appellee. That authority says that: "Such judgment is prima facie evidence of the facts which it recites. It is not, however, conclusive." And the case of Moses Stearn, a native of Germany, who had been naturalized in the United States, is called by the author illustrative of the proposition suggested. In that case Stearn was naturalized, returned to Germany, and claimed the rights of citizenship and immunities of a citizen of the United States. A contest arose over the subject, and an international correspondence, carried on by the secretary of state on the part of the United States, was had in regard to his rights. On investigation by Mr. Fish, secretary of state, it was found that his naturalization papers were fraudulent and void, and the government of the United States refused to afford the protection which he claimed. We are of opinion that the judgment of naturalization offered in evidence in the court below in this case could not be attacked in the court below, and that the appellee, being a naturalized citizen of the United States, and not any longer a member of the tribe of Cherokee Indians, could sue in the United States Court for the Indian Territory, and that the court had jurisdiction of the cause.

The second proposition raised by the assignment of errors in this case is that if the court had jurisdiction of the cause, and the judgment of the Cherokee Court is ˛valid and binding, it is a bar to this action.    The appellee charges in her pleadings that the suit instituted in the Cherokee Court n her name was without her authority, or knowledge or consent; that it was a fraud and a forgery; and that she knew nothing of it until after the decree of divorce had been granted by the court to the appellant.    These allegations do not appear to have been questioned below, and we must assume that they were amply supported by the testimony. Such being the case, the judgment of divorce in the Indian Court.is evidently void, and can be attacked anywhere, even in a collateral proceeding.    It is, says Black on Judgments (section 215,) essential to the validity of the judgment that the court have jurisdiction of the persons, of the subject-matter, and the particular question before it.    It cannot act upon persons not legally before it, upon one who is not a party to the suit, a plaintiff who has not invoked its arbitrament, or upon a defendant who has never been notified of the proceedings.    In section 208, same authority, the following language is used:    ''It is a familiar and universal rule that a judgment by a court having no jurisdiction of either of the parties or the subject-matter is void and a mere nullity, and will be so held and treated whenever and wherever, and for whatever purpose, it is sought to be used or relied on as a valid judgment.''    In the same section Mr. Black says that it is deducible from a majority of the cases that it is only when a judgment appears upon its face to have been rendered without jurisdiction that it can be considered a mere nullity for all purposes.    In section 275, Black, Judgm., it is said that the preponderance of authorities is in favor of the rule that a judgment of a superior court can never be impeached collaterally for want of jurisdiction not appearing on its face.    The rule, however, is limited to domestic

Evidence—
Presumption
to support
judgment.

Judgment—
Collateral at-
tack.

judgments; for, in the case of a judgment coming from a sister state or a foreign country, it is agreed that the want of jurisdiction may always be shown against it. The judgment of the Cherokee Indian Court granting the divorce which was pleaded in the court below in this case is undoubtedly on the same footing, with relation to the courts of the Indian Territory, as a judgment of a court of a state or territory. The rule seems to be, in all such cases, that the want of jurisdiction can be assailed collaterally on a proper allegation in the pleadings attacking the judgment to be used in the case, and, if the testimony discloses the fact that the court rendering the judgment did not have jurisdiction of the parties, the judgment will be held, in such a proceeding, void. We are of opinion, therefore, that this judgment is void for the want of jurisdiction of the parties in the Cherokee Courts, and that no error was committed in allowing the collateral attack made on it by the appellee in the court below. The appellant has made no attack upon the sufficiency of the testimony to support the findings of the court below throughout, and this court must conclude that the testimony was sufficient, and that the court found in accord therewith. Affirmed.

*Judgment— Collateral attack.*

LEWIS, J., concurs.