THE STATE, by MEYER, Prosecuting Attorney, ex rel. LACY et al., Appellant, v. BRANDHORST.

Division Two, May 21, 1900.

Naturalization: ERRONEOUS JUDGMENT: COLLATERAL ATTACK. Notwithstanding the absence of a law admitting a minor to be naturalized, a judgment of a court of competent jurisdiction naturalizing a minor, though erroneous, is not void, and can not be attacked collaterally, but can only be annulled or set aside by appeal or writ of error, taken for that purpose.

Appeal from Gasconade Circuit Court.—*Hon. Rudolph Hirzel*, Judge.

AFFIRMED.

*Edward C. Crow*, Attorney-General, and *Robert Walker* for appellant.

(1) Respondent under the facts in this case could only become a citizen of the United States by proceeding under the laws of naturalization passed by acts of Congress. Boyd v. Thayer, 143 U. S. 135. (2) And naturalization is nothing more or less than a judicial determination of an asserted right. In re Bodek, 63 Fed. Rep. 813; Spratt v. Spratt, 4 Pet. 393; Webster on Citizenship, p. 143. (3) Respondent could only complete his naturalization by judicial determination before a court. Acting always as a citizen, holding numerous offices and taking the oaths of said offices, could never make him a naturalized citizen without judicial determination before a proper court. Boyd v. Thayer, 143 U. S. 180; Webster on Citizenship, p. 139. (4) Respondent's father, in making the declaration of intention to become a citizen, did not change his nationality as a subject of Prussia, and died as such; and respondent, as a minor son, could not assume a different status, so long as he was a minor. Webster on Citizenship, p. 139; Morse on Citizenship, p. 105. (5) Respondent at the time of his admission to citizenship in the Gasconade circuit court on March 15, 1865, was a minor, only nineteen years of age. He at that time had no will or capacity to change his nationality. Morse on Citizenship, pp. 12, 141; Webster on Citizenship, p. 234; Shanks v. Dupont, 3 Pet. 242; Vattel, Book 1, p. 101. (6) The circuit court of Gasconade county in admitting respondent on March 15, 1865, when only nineteen years old, to full citizenship, proceeded without jurisdiction or authority. The naturalization laws

passed by Congress apply only to persons of full age.   Webster on Citizenship, pp. 234, 236.   (7)   Respondent having, by virtue of his own act and election, no capacity to have his right to naturalization judicially determined until he was 21 years of age; and having his right to naturalization never judicially determined after attaining such age, it follows that he was not a citizen of the United States at the time of his said election as collector, and hence, was not then eligible to said office.   Constitution of Missouri, art. VIII, sec. 12.

*J. C. Kiskaddon* for respondent.

(1)   The Constitution of the United States empowers Congress "to establish an uniform rule of naturalization," and this power is vested exclusively in Congress, and can not be exercised by the States.   Constitution, art. I, sec. 8; 16 Am. and Eng. Ency. of Law (1 Ed.), 224.   (2)   In the exercise of this power Congress passed two acts approved respectively April 14, 1802, and March 26, 1804, which control in this case.   2 R. S. 1855, pp. 1609-1611, 1612.   (3)   Under the first of these statutes it has been held that instantly, upon a father being naturalized, his children, being minors and dwelling in the United States, became citizens.   Campbell v. Gordon, 6 Cranch (U. S.), 182; Minor v. Happersett, 21 Wall (U. S.), 169; Kelly v. Owen, 7 Wall (U. S.), 496.   (4) Neither the act of April 14, 1802, nor the act of March 26, 1804, requires that a minor shall attain his majority before taking the oath of citizenship.   The first act makes him *eo instanti* a citizen, without any act of his own, if a minor, and dwelling here, the moment his father is naturalized.   The second act, in relation to the minor's status, uses the same language as the first, only requiring him to take the oaths prescribed by law, but does not require him to attain his majority before doing so.   2 R. S. 1855, pp. 1611, 1612, secs. 4 and 2. (5)   The decision of the court admitting a person to citizen-

ship is a judgment *in rem*, fixing the status of the person, and, if the court has jurisdiction, is conclusive against the world, and can not be attacked collaterally. Spratt v. Spratt, 4 Peters (U. S.), 393; Stark v. Ins. Co., 7 Cranch (U. S.) 420; Free on Jdg. (2 Ed.), sec. 606. (6) And can only be annulled by a direct proceeding by the United States for that purpose. U. S. v. Narsh, 42 Fed. Rep. 417. (7) The Constitution of this State negatively prescribes that none but citizens of the United States can hold office in this State. Constitution, art. VIII, sec. 12.

SHERWOOD, J.—On the trial of the issue joined in this *quo warranto* proceeding against Brandhorst as collector of Gasconade county, the trial court upon what it considered sufficient evidence, found the issue in favor of Brandhorst, and denied the writ of ouster. Henry Brandhorst was born in Prussia in 1846. His father of the same name removed to this country in 1856, bringing his son with him. In 1857, the father, as found by the lower court, took out his first naturalization papers, when his son was eleven years of age. The father died in 1864, without having taken out his final papers. In 1865, the son himself took out citizen papers when he was nineteen years of age, as recited by the record.

The only question arising on these facts is whether they confer citizenship in respondent. This case is governed by the provisions of an act of Congress, "To Establish a Uniform Rule of Naturalization," approved April 14, 1802. [2 U. S. Stat. at Large, p. 153.]

Henry Brandhorst, Sr., had made the preparatory declartion required by section 1 of that act.

Section 2 of the act, approved March 26, 1804, provided: "That when any alien who shall have complied with the first condition specified in the first section of the original act, and who shall have pursued the directions prescribed in the second section of the said act, may die, before he is actually natural-

ized, the widow and children of such alien shall be considered as citizens of the United Sattes, and shall be entitled to all rights and privileges as such, upon taking the oaths prescribed by law." [2 U. S. Stat. at Large, p. 293.]

But the second section of the act of March 26, 1804, just quoted, was repealed by that of May 24, 1828. [4 U. S. Stat. at Large, p. 310.] This fact is confessed and pointed out by Mr. Kiskaddon with a candor more charming than common. The lower court evidently was of the opinion, as appears from quotations, that sections 2165 and 2168 of the Act of Congress of 1883, were the governing sections in this case; their provisions are in substance similar to those sections of the act of 1802 and 1804 already quoted. But inasmuch as the second section of the act of 1804 was repealed prior to the occurrences already related, there was no law in force in 1865 of the kind provided in section 2168.

But notwithstanding the absence of such a law, admitting a minor to be naturalized, yet respondent has been admitted for that purpose by the judgment of a court of competent jurisdiction. This judgment, even if it be erroneous, is not void; it can not be collaterally attacked, and can only be annulled or set aside by appeal or writ of error, taken for that very purpose. That judgment has become competent and complete evidence of its own validity. [Spratt v. Spratt, 4 Peters, 393.]

Such naturalization judgments, can, it seems, be impeached for fraud by a proceeding in a United States Court for that purpose; but can not be reached in such court for mere error or irregularity. [U. S. v. Norsch, 42 Fed. Rep. 417.]

The worst that can be said of the judgment that naturalized respondent, is that the court giving that decision, gave the wrong decision, when it had the power to give the right one. But this did not at all affect its jurisdiction to render the wrong judgment. Courts of all grades in this State have the inestimable privilege of rendering wrong decisions, and these

decisions, so far as concerns courts of *nisi prius* pass muster and pass current until (possibly and perhaps) reversed on error brought or appeal taken.   But errors in the judgment of courts of last resort are remediless except in the few instances where constitutional provisions admit of taking the cause one step higher.

In reference to the rule that judgments irregular or erroneous but not void, can not be overthrown by means of a collateral attack, see State v. Wear, 145 Mo. 162, where the subject is elaborately discussed.   That case was approvingly cited and followed in State ex rel. v. McKee, 150 Mo. 233.

For these reasons we affirm the judgment.   All concur.