I think the fair interpretation of the petition is that, while there was one conviction of an employé, there was no violation of the liquor tax law, and as, in the absence of the statute, the proof of a conviction of the employé would not be proof of a violation by the employer, he has sufficiently alleged no violation to put the respondent to his answer. By this interpretation the several provisions of the statute alluded to may all stand, each being given full force and effect, exhibiting a clear and consistent scheme; and this accords with the decisions of this court in People ex rel. Hupfel's Sons v. Cullinan, 95 App. Div. 598, 88 N. Y. Supp. 1022, and People ex rel. Munch Brewery v. Clement, 117 App. Div. 539, 102 N. Y. Supp. 779.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and a motion for an alternative writ of mandamus granted. All concur.

---

In re BOARD OF DIRECTORS OF AUTOMATIC CHAIN CO.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1909.)

1. CORPORATIONS (§ 610*)—JUDGMENT OF DISSOLUTION—VACATING.

Though there is no fraud, mistake, inadvertence, or irregularity in the proceedings, the Supreme Court, under its general inherent power, in the interests of substantial justice, and to prevent injustice even to persons not in form parties to the proceedings, but whose rights will otherwise be injuriously affected, can set aside its judgment dissolving a corporation, as it could any other judgment.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 610.*]

2. CORPORATIONS (§ 610*)—DISSOLUTION—SETTING ASIDE—POWER OF COURT.

It cannot be urged, against the setting aside of a judgment dissolving a corporation, that by the judgment the corporation became, and is ever thereafter, legally dead, and so cannot be revived by judicial authority.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 610.*]

3. CORPORATIONS (§ 610*)—DISSOLUTION—SETTING ASIDE—NOTICE.

An order to show cause, or notice of motion to set aside a judgment dissolving a corporation, need not be served on each stockholder and creditor of the corporation; the Attorney General, the receiver of the corporation, and the only stockholder who had appeared in the dissolution proceedings being present, the other directors having then no interest in the corporation as stockholders, the creditors being protected by a bond required as a condition of setting aside the judgment, and the other stockholders, who had not appeared in the dissolution proceedings, not being necessary parties to the application to set aside the judgment.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 610.*]

4. CORPORATIONS (§ 610*)—DISSOLUTION—SETTING ASIDE—GROUNDS.

Setting aside the dissolution of a corporation is in the interest of substantial justice, so as to warrant it; the corporation, organized to manufacture chains by use of patented machines and a patented process, having paid $30,000 cash and some stock for the patents, having contracted for patented machines for $22,000, paid $8,000 thereon, and received part of the machines, and being indebted for nothing else, and the applicant for setting aside the dissolution being the owner of a majority of the stock, and having invested $29,500 therein after commencement of the dissolution proceedings, and having furnished a bond for payment of all debts

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the corporation, and only one stockholder, holding 5 shares of stock, opposing the setting aside of the dissolution.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 610.*]

Appeal from Special Term, Erie County.

In the matter of the application of a majority of the board of directors of the Automatic Chain Company for a dissolution of said company. From an order (64 Misc. Rep. 280, 118 N. Y. Supp. 542) setting aside the judgment of dissolution, Elwood Grissinger appeals. Affirmed.

Appeal from an order which vacated and set aside the final order of dissolution of said corporation, made November 8, 1908, upon the petition of a majority of the directors of the company, and the proceedings thereafter had, on the ground that the corporation was insolvent, etc. It also directed discontinuance of the dissolution proceedings, declared the corporation to be in existence the same as before the dissolution proceedings were instituted, discharged the receiver theretofore appointed, and directed the return by him to the corporation, after deducting certain fees, expenses, etc., of the receivership, of all property of the corporation theretofore coming to his hands. It also directed the original petitioner for this order, Michael B. Ryan, to furnish a bond in the penalty of $15,000, conditioned for the payment by the corporation of any existing indebtedness thereof, which bond was then furnished and duly approved. The original order of dissolution of the corporation was made in proceedings instituted by a majority of the directors of the company. These directors had small interests in the company's property and were holders of an insignificant amount of stock. The largest single owner of stock was Michael B. Ryan, above named, who was also a director of the corporation. Elwood Grissinger, also a director, and president of the company, was indirectly largely interested in its affairs. Ryan did not attend the meeting of the directors at which it was voted to begin dissolution proceedings. Grissinger attended, but did not vote on the resolution. The dissolution proceedings thus inaugurated resulted in an order of dissolution, granted November 10, 1908, which also appointed Alfred A. Berrick, who was one of the directors of the company, as permanent receiver. During the pendency of these proceedings and thereafter Ryan had been actively engaged in an attempt to procure a majority of the stock of the company, which he succeeded in accomplishing shortly after the dissolution order. His holdings of common stock of the company at the time the proceedings were instituted were 600 shares, or 40 per cent. of the total common stock. His subsequent purchases were made at an expense of $29,500, and at the time of making his petition for vacation of the order of dissolution he was the owner of 755½ shares of common and 285 shares of preferred stock. But 420 shares of the authorized amount of 1,500 shares of preferred stock had then been issued. Ryan, therefore, was then a majority holder of both common and preferred stock. On Ryan's petition, presented 22 days after the dissolution order was granted, an order issued to show cause why that order should not be vacated and set aside for irregularity, upon the ground that sufficient proof of service of notice upon the parties who had appeared in the proceedings had not been made as required by law, and directing that service of copy of the order be made upon the attorney representing the Attorney General of the state of New York, upon the receiver's attorney, and upon Grissinger's attorney. These parties were the only persons who had appeared in the dissolution proceedings. On the return of the order to show cause, the Attorney General and Grissinger appeared by attorneys. Grissinger having interposed preliminary objections to the application, the matter was duly continued. Before Ryan's application was disposed of, and on December 31, 1908, Berrick, the receiver, by petition and notice of motion, returnable at Special Term, on his part, began proceedings to have the final order of dissolution vacated and set aside, and all proceedings discontinued therein, if it should be made to appear to be for the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

best interests of the parties interested. On the motion day the same parties, appearing on the return of the original order to show cause on Ryan's application, appeared. It was shown that Ryan had purchased all of the stock originally held by the·directors who had voted for dissolution of the corporation. Grissinger interposed, then, preliminary objections to the application of the receiver. These two applications by Ryan and the receiver were heard by the court and determined together in the single order appealed from: and, the determination of the preliminary objections having also been held till that time, they were then overruled.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Joseph B. Dudley, for appellant.
William Burnet Wright, Jr., for respondent.

ROBSON, J. It does not seem to be urged by respondent on this appeal, and the order from which this appeal is taken is not based upon the fact, that there was any fraud or irregularity in the proceedings which resulted in the order of dissolution of the corporation. Appellant urges that, in the absence of fraud, mistake, inadvertence, or irregularity in those proceedings, the court had no power to vacate the final order of dissolution. This position of appellant involves an answer to this question: Has the Supreme Court of the state of New York the same power over its order dissolving a corporation which it has over any other order granted by it? The general power of the Supreme Court to vacate, set aside, or modify even its final orders or judgments, for sufficient reason and in the interests of substantial justice, is well recognized, is not dependent upon any express statutory provision giving it that power, but is a power inherent in the court itself. The statement defining and recognizing this power most frequently adopted by the courts is found in the case of In re City of Buffalo, 78 N. Y. 370. The court says:

"Courts have always control over their own proceedings, and, where there is not express prohibition, may deal with them so that what is right and just may be reached."

Many instances of the exercise of this power are found in the reported cases. It is true that in many of these cases there appeared either fraud, excusable mistake, irregularity, or inadvertence. But the court is never limited in its action in setting aside or modifying its orders, decrees, or judgments to any one or all of these occasions for its exercise; but, if it appears that substantial justice will be subserved, and injustice to persons, even though they ·be not in form parties to the proceeding, whose rights would otherwise be injuriously affected by the judgment, prevented, the court will set aside, correct, or modify its judgment. Ladd v. Stevenson, 112 N. Y. 325, 19 N. E. 842, 8 Am. St. Rep. 748; Gould v. Mortimer, 26 How. Prac. (N. Y.) 167. See, also, Vanderbilt v. Schreyer, 81 N. Y. 646, where the general power of the court to deal with its proceedings is stated in broad and liberal terms.

Appellant further urges that, the corporation having been dissolved by the court's order, it became thereupon, and is forever thereafter, legally dead, and cannot be revived by judicial authority. To hold this

would be to place such orders as to their legal effect in a class by themselves, as immune from further interference by way of correction or change in ultimate effect. There does not appear to be any reason why different principles should control the court's action as to such orders from those of general application in other court proceedings. The power of the court in proper case to set aside such an order seems to be suggested, though not in terms decided, in the Matter of the Peekamose Fishing Club, 151 N. Y. 511, 520, 45 N. E. 1037. That the court has such power, and can revive or resuscitate a corporation it has by order dissolved, is expressly held in the Connecticut court of last resort. Sullivan Co. R. R. Co. v. Connecticut River Lumber Co., 76 Conn. 464, 57 Atl. 287. The reasoning upon which that decision is based is entirely satisfactory and convincing. It is true that in this case the ground for setting aside the order of dissolution was for fraud and irregularity. But, if the automatic effect of such an order is to toll the limit of the corporation's legal life, I see no reason why it would not be equally fatal to its existence when fraudulently or irregularly granted, as it would be if the order were improvidently granted.

I think the preliminary objection interposed by appellant on the return of the order to show cause on Ryan's application, and on the hearing of the receiver's motion, that the order to show cause in the first proceeding and the notice of motion in the second should have been served upon each of the stockholders of the corporation, and that said stockholders and creditors were entitled to be heard in each proceeding, was in each case properly overruled by the court. The Attorney General, the receiver of the corporation, and the only stockholder who had appeared in the dissolution proceedings were before the court. The other directors had then no interest in the corporation as stockholders. The creditors are protected by the order granted, and payment of their claims by the corporation is assured by the bond which Ryan gave as a condition of granting the order. The other stockholders, who had not appeared, were not necessary parties to this application. Matter of Broadway Ins. Co., 23 App. Div. 282, 48 N. Y. Supp. 299. In the case last cited it is true the application to the court in the dissolution proceedings concerned not a final order, but attacked the proceedings for failure to serve the first order to show cause on the Attorney General. The reason for serving notice upon stockholders, who had not appeared, would seem to be equal in each instance.

The order appealed from was in the interests of substantial justice. The corporation was organized to manufacture chains by the use of patented machinery and a patented process. Its assets consisted largely of its ownership of, and interest in, these patents. It had paid for these patents and interests $30,000 in cash and by delivery of 1,200 of its 1,500 shares of common stock. It had also contracted for the construction of some five of these patented machines, at an expense of $15,200. Two of these machines had been delivered, and the corporation had paid therefor $4,400. The remaining machines had been manufactured, but not delivered. It had also contracted for an electric motor, etc., at the price of $7,000, upon which $3,500 had been

paid, but the machines had not been delivered. The total of the liabilities of the corporation, as found by the referee, was $14,608. Of this sum $14,600 was for the unpaid purchase price of the machines above referred to, with certain charges for storage added. The indebtedness outside of these claims was insignificant. In the schedule of assets, the patents and privileges thereunder, for which the company had in fact paid $30,000 in cash, in addition to the shares of stock above referred to, were valued at $5,000. The two chain-welding machines in its possession, which had never been used, for which the corporation had paid $4,400, were valued at $100 each. To a going concern there is apparent reason to believe that the patents and these machines, which are concededly necessary to carry on the business for which the corporation was organized, would be worth much more than the value fixed by the referee. When the liabilities are paid, the company will have three more machines and the electric equipment.

Ryan is anxious to proceed with the business of placing the corporation on its feet. He is the person most largely interested in its success. He has shown his good faith by his large investment in the stock of the company after the proceedings were begun for the dissolution of the company, and by furnishing a bond by which payment of all liabilities is assured. The order appealed from was opposed, and its granting is now attacked, by only one stockholder, who owns but five shares of its stock. There seems to be no conceivable reason why the order, rehabilitating the corporation, and again giving it the opportunity to proceed with the business for which it was organized, was not, under all the circumstances, well warranted, and a just and equitable exercise of judicial discretion.

Order affirmed, with $10 costs and disbursements. All concur.