UNITED STATES v. VOGEL.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

No. 29.

ALIENS ⬤⟳68—POWER OF COURT TO GRANT AMENDMENT OF NATURALIZATION PETITION.

Where an alien in his declaration of intention, and later in his petition for naturalization, erroneously stated the sovereignty to which he owed allegiance, which allegiance, as required by statute, he "particularly" renounced, the court is without power on hearing of his petition, by an order nunc pro tunc, to allow amendment of the declaration and petition, to date back to the time of their filing.

Appeal from the District Court of the United States for the Southern District of New York.

Petition by Albert Vogel for naturalization. From an order granting naturalization, and dismissing its petition for cancellation of certificate, the United States appeals. Reversed.

Francis G. Caffey, U. S. Atty., of New York City (Julian Hartridge, of New York City, of counsel), for the United States.

Frank Case Hayden, of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Appellee, at the time his application for citizenship was filed, was a resident of the Southern district of New York. He was born in Benningen, Germany, in 1885. He came to this country from France in 1906. On August 27, 1914, he subscribed and swore to a declaration of intention to become a citizen, and on April 23, 1917, he subscribed and filed a petition for naturalization. Each of these papers recited that he was born in Benningen, Germany, in 1885, and in them he made the usual oath renouncing allegiance to any foreign sovereign, particularly the emperor of Germany. On August 7, 1917, he subscribed and swore to an oath of allegiance, renouncing his foreign allegiance, to wit, to the emperor of Germany. On March 26, 1918, he appeared in open court before the District Judge to complete his naturalization. The District Judge took testimony, and

the appellee testified that he was a French citizen. An order was granted nunc pro tunc striking out the words "William II, emperor of Germany," and substituting the words "French Republic," and a decree was entered admitting the appellee to citizenship. The government has appealed from the order amending the oath of allegiance and granting naturalization to the appellee, and asks that the certificate be canceled.

The District Judge filed an opinion in which he recognized the conflict of authorities of the various District Courts as to the power of a District Judge to amend, nunc pro tunc, a declaration of intention to become a citizen, at any time during the proceedings. He reached this conclusion, taking the view that, because the statute requires, with respect to both the declaration of intention and the petition for naturalization, that the applicant renounce, not only his particular sovereignty, but that of every other sovereignty as well, the purpose of particularizing as to his own sovereignty is merely one of identification, and that the general renunciation is sufficient to include that sovereignty. The court was of the opinion that the new loyalty was adequately evidenced by the oath of allegiance as supplemented by the general renunciation.

The requirements to become a citizen of the United States are con tained in section 3 of the act of June 25, 1910 (Comp. St. § 4352), as follows:

"First. He shall declare on oath before the clerk of any court authorized by this act to naturalize aliens, or his authorized deputy, in the district in which such alien resides, two years at least prior to his admission, and after he has reached the age of eighteen years, that it is bona fide his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly, by name, to the prince, potentate, state, or sovereignty of which the alien may be at the time a citizen or subject. * * *

"Second. Not less than two years nor more than seven years after he has made such declaration of intention he shall make and file, in duplicate, a petition in writing, signed by the applicant in his own hand writing and duly verified, in which petition such applicant shall state his full name, his place of residence (by street and number, if possible), his occupation, and, if possible, the date and place of hs birth. * * *

"The petition shall set forth that * * * it is his intention to become a citizen of the United States and to renounce absolutely and forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, particularly by name to the prince, potentate, state, or sovereignty he at the time of filing of his petition may be a citizen or subject. * * *

"At the time of filing his petition there shall be filed with the clerk of the court a certificate from the Department of Commerce and Labor, if the petitioner arrives in the United States after the passage of this act, stating the date, place, and manner of his arrival in the United States, and the declaration of intention of such petitioner, which certificate and declaration shall be attached to and made a part of said petition.

"Third. He shall, before he is admitted to citizenship, declare on oath in open court that he will support the Constitution of the United States, and that he absolutely and entirely renounces and abjures all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly by name to the prince, potentate, state, or sovereignty of which he was before a citizen or subject. * * *"

The United States District Courts have jurisdiction to naturalize by virtue of section 3 of the act of June 29, 1906 (34 Stat. 596 [Comp.

St. § 4351]). This section provides the procedure and the limitations thereof. Section 2171 of the Revised Statutes provides that no alien who is a native, citizen, or subject or the denizen of any country, state, or sovereignty with which the United States is at war at the time of his application, shall be then admitted to become a citizen of the United States. At the time of this application the United States was at war with the German Empire.

The district judge found that appellee was the son of a parent who was of Alsace-Lorraine at the time that territory was a part of France. His father served in the French army in the Franco-Prussian war, and he returned to France afterwards to reside in Paris. He and his wife were both French citizens. The appellee was born in Germany while his mother was there on a visit, after Benningen became German territory. The appellee mistakenly renounced allegiance to Germany, when he should have renounced allegiance to France. This was due to mistaken information given the applicant as to the proper sovereignty. The question, therefore, is presented whether the court had the power to admit to citizenship, in view of the erroneous renunciation in the declaration of intention and petition for naturalization in the specification of the particular sovereignty to which allegiance had been previously owing, and to do this by granting an order nunc pro tunc.

In the District Courts, there has been a division of view as to such power in the court. The following authorities have held that no such power exists in the court: In re Lewkowicz, 169 Fed. 927; In re Stack, 200 Fed. 330; Ex parte Lange, 197 Fed. 769; In re Friedl, 202 Fed. 300. On the other hand, it has been held that such power existed in the federal court. U. S. v. Viaropulos, 221 Fed. 485; U. S. v. Orend, 221 Fed. 777; In re Denny, 240 Fed. 845.

In U. S. v. Ginsberg, 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853, four questions were certified to that court which dealt with the regularity of naturalizing citizens. But two of the four questions were answered. The first of the questions answered was:

"Is the final hearing of a petition for naturalization, had in open court as required by section 9 of the act of June 29, 1906, c. 3592 [Comp. St. § 4368], if after the petition is first presented in open court the hearing thereof is passed to and finally held in the chambers of the judge adjoining the courtroom, on a subsequent day and at an earlier hour than that to which the court has been regularly adjourned?"

And the second:

"(4) May a certificate of citizenship be set aside and canceled, in an independent suit brought under section 15 of the act of June 29, 1906, c. 3592 [Comp. St. § 4374], on the ground that it was illegally procured, if the uncontradicted evidence at the hearing of the petition showed indisputably that the petitioner was not qualified by residence for citizenship, and that the court or judge who heard the petition and ordered the certificate misapplied the law and the facts?"

The court held that a hearing in the judge's chambers adjoining the courtroom did not satisfy the requirements of the act and that the certificate of citizenship granted by the court could be annulled in an independent suit by the United States. The court said:

"An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress.

Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare. * * * The whole statute indicates a studied purpose to prevent well-known abuses by means of publicity throughout the entire proceedings. Its plain language repels the idea that any part of a final hearing may take place in chambers, whether adjoining the courtroom or elsewhere.

"No alien has the slightest right to naturalization unless all statutory requirements are complied with, and every certificate of citizenship must be treated as granted upon condition that the government may challenge it as provided in section 15 and demand its cancellation unless issued in accordance with such requirements. If procured when prescribed qualifications have no existence in fact it is illegally procured; a manifest mistake by the judge cannot supply these nor render their existence nonessential."

When the act of June 29, 1906 (34 Stat. 596), was enacted "as a uniform rule of naturalization," Congress dictated in particularity as to what the declaration of intention should consist of, and required the applicant to particularize as to the sovereignty from whence he came and which he was renouncing. The system is statutory, and the only province of the courts is to ascertain the will of Congress and execute it accordingly. Citizenship can only be obtained by complying with the terms as prescribed by Congress. The act itself provides the terms to an explicit degree when "an alien may be admitted to become a citizen in the manner and not otherwise." Citizenship may not be obtained by an alien in any other manner. Every material obligation, as imposed by statute, constitutes a part of the manner as contemplated by Congress in the act. The act provides that an alien shall renounce "particularly by name to the prince, potentate, state, or sovereignty of which he was before a citizen or subject" at the appropriate time in each instrument. It is not within the power of courts, in our opinion, to vary this rule and permit the applicant at a later time to recognize his mistake and ask to change it, for to do so would be permitting the applicant to declare his intention of renunciation at a time other than when making his application.

When making his declaration and signing his petition and filing the same is the time he must announce his renunciation as a citizen or subject of the particular government. It was the intent of Congress to have such renunciation of the particular foreign sovereignty made contemporaneously with the execution and filing of each of the necessary instruments, and the court is without power later to permit a change to date back by granting an order nunc pro tunc.

For the court to do so, we think, is reading into the statute a permission which is tantamount to a trespass upon the executive domain, nor can the court say which steps must be complied with and which may be omitted in compliance, and which may be corrected if error creep in. To permit such power in the court would frustrate the whole act; it would place the power of the court above the terms of the act. To permit of a substantive amendment would, in but a step further, permit naturalization to become effective without amending an insufficient declaration. This the courts cannot and should not do. We think the court below was without the power to grant the order nunc pro tunc, and erred in admitting the appellee to citizenship.

Decree reversed.