In the Matter of the Application of IZRAEL WOLTON to Correct and Amend His Certificate of Naturalization.

Supreme Court, New York County, August 4, 1925.

Aliens — naturalization — application for order correcting petitioner's record of naturalization as to date of birth of son — error made inadvertently — Supreme Court has exclusive jurisdiction to naturalize aliens as citizens of United States under 34 U. S. Stat. at Large, 596, § 3 — said court, having inherent power to amend its records, may correct clerical error in naturalization record without regard to timeliness of application — application granted.

The Supreme Court of the State, in a proper case, has exclusive jurisdiction to naturalize aliens as citizens of the United States under the provisions of 34 U. S. Stat. at Large, 596, § 3.

The power of the court to amend its records, including final judgments and decrees, is not only expressly permitted by sections 105, 108, 109 and 511 of the Civil Practice Act, but is inherent in the court itself and may be exercised at any time. Moreover, a judgment or decree of naturalization is for all purposes the same as any other judgment or decree rendered by the court in a special proceeding.

Accordingly, petitioner is entitled to an order correcting the record of his naturalization as to the date of the birth of a son, where sufficient proof has been adduced to establish the fact that the error was clerical and inadvertently made. Notwithstanding the fact that the petitioner seeks to correct the error after the expiration of the term of the court in which the record was made, petitioner is entitled to relief as a matter of discretion and right, since, in the event of a denial of the application, he would be wholly without an adequate remedy and would subject his child to the continual necessity of establishing his rights as a citizen.

APPLICATION by petitioner for an order correcting the record of his naturalization.

*Nathan Berk,* for the petitioner.

*Merton A. Sturges, District Director of Naturalization,* opposed.

LEVY, J.:

The petitioner makes application for an order correcting the record of his naturalization by this court so that the date of birth of his son Charles Wolton shall appear as July 31, 1891, instead of July 31, 1889, as therein erroneously stated. Sufficient proof is adduced to establish the error and its inadvertence and to excuse the delay in making this motion. Notice of the application was given to the county clerk, as the custodian of the records of this court. The District Director of Naturalization has appeared in opposition, and presented what seems at first glance a formidable array of authorities holding that this court is without power to amend or correct its record of naturalizations or the decrees entered therein after the lapse of the term in which they occurred.

Impressed by the hardship of an alleged rule that prevents a court of record from rectifying an error in its records, except under rather narrow limitations, and in the absence of a brief by petitioner's counsel, I have made some little research of the question involved and feel constrained to deny the existence of any such inflexible rule. It is true that a judgment or decree in naturalization proceedings is conclusive on all matters therein recited and cannot be collaterally attacked. (*Spratt* v. *Spratt,* 4 Pet. 393, 407, 408; *McCarthy* v. *Marsh,* 5 N. Y. 263.) If, however, it should be held that no method exists of correcting an erroneous record after the expiration of the given term of court, every naturalized citizen who has been so unfortunate as to make some error in his petition, or to have some incorrect recital made in the decree by the clerk or counsel — if the authorities cited by the director are controlling or in point — is forever bound thereby, no matter how harmful or unjust the result may be. It is unthinkable that such a situation should exist, or that our courts are helpless to render proper aid. It is, therefore, necessary at the outset to examine the law under which this court exercises its power in naturalization.

While Congress has sole jurisdiction of matters pertaining to naturalization, except in so far as it has delegated its powers, it has by statute conferred " exclusive jurisdiction to naturalize aliens as citizens of the United States " upon certain courts, including " all courts of record in any State * * * having a seal, a clerk, and jurisdiction in actions at law or equity, or law or equity, in which the amount in controversy is unlimited." (34 U. S. Stat.

Supreme Court, August, 1925. [Vol. 125

at Large, 596, § 3; Barnes Fed. Code, § 3749; U. S. Comp. Stat. § 4351.). The Supreme Court of this State is such a court and its jurisdiction in such a matter as this is, in a proper case, exclusive. A judgment or decree of naturalization is for all purposes the same as any other judgment or decree rendered by the court in a special proceeding. (*Spratt* v. *Spratt, supra; McCarthy* v. *Marsh, supra.*) The power of this court to amend its records, including final judgments and decrees, is not only expressly provided for by the Civil Practice Act (§§ 105, 108, 109, 511), but is inherent and may be exercised at any time. (*Clark* v. *Scovill,* 198 N. Y. 279, 286; *Ladd* v. *Stevenson,* 112 id. 325.) This principle is very clearly stated in *Matter of Automatic Chain Co.* (134 App. Div. 863, 866; affd., 198 N. Y. 618), as follows: " The general power of the Supreme Court to vacate, set aside, or modify even its final orders or judgments for sufficient reason and in the interests of substantial justice is well recognized, is not dependent upon any express statutory provision giving it that power, but is a power inherent in the court itself. The statement defining and recognizing this power most frequently adopted by the courts is found in the case *Matter of City of Buffalo* (78 N. Y. 370). The court says: ' Courts have always control over their own proceedings, and where there is not express prohibition, may deal with them so that what is right and just may be reached.' Many instances of the exercise of this power are found in the reported cases. It is true that in many of these cases there appeared either fraud, excusable mistake, irregularity or inadvertence. But the court is never limited in its action in setting aside or modifying its orders, decrees or judgments to any one or all of these occasions for its exercise; but if it appears that substantial justice will be subserved, and injustice to persons, even though they be not in form parties to the proceeding, whose rights would otherwise be injuriously affected by the judgment, prevented, the court will set aside, correct or modify its judgment. (*Ladd* v. *Stevenson,* 112 N. Y. 325; *Gould* v. *Mortimer,* 26 How. Pr. 167.) " In the case of *Ladd* v. *Stevenson (supra)* the Court of Appeals in referring to this prerogative, said: " Its power to do so does not depend upon any statute, but is inherent, and it would be quite unfortunate if it did not possess it to the fullest extent."

The United States Supreme Court has also, in large measure, recognized this power in *Gagnon* v. *United States* (193 U. S. 451, 456) as follows: " The power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or to supply defects or omissions in the record, even after the lapse of the term, is inherent in courts of justice."

These cases would seem to be conclusive upon the right of the applicant to obtain the relief asked for. But a proper elucidation of the law as specifically applicable to naturalization decrees, requires a review of the precedents relied upon in opposition. These are mainly memoranda decisions that are based upon certain rulings of some of the Federal courts, which support their conclusions on the supposed limitation upon the power of a Federal court to amend its decree after the term of the court has passed. But I am of the opinion that these Federal decisions have failed to take cognizance of the distinction between the power to make a clerical amendment or correction of the record, which is inherent and unlimited, and the power under the Federal statutes to amend, modify or set aside the decretal portions of a judgment or order which is statutory and must be exercised at the same term of court. This distinction is pointed out in *Gagnon* v. *United States* (*supra*), and in the cases cited there with approval: *Whiting* v. *Equitable Life Assurance Society* (60 Fed. 197, 200); *Odell* v. *Reynolds* (70 id. 656, 659); *Blythe* v. *Hinckley* (84 id. 228, 244). In these cases the rule is laid down that the court may correct errors in the making up of its records if they fail to express the truth in regard to its proceedings. And this power, the cases hold, may be exercised by the court at any time when the error is brought to its attention, no matter how material the change may be.

Testing the application in the light of the authoritative Federal decisions alone, it is clear that the error sought to be corrected is a clerical one, which even the Federal courts will correct without regard to the timeliness of the application. (*Matter of Hennig*, 248 Fed. 990, Eastern District of New York.)

The decision of the United States Supreme Court seems to be decisive upon the power of the Federal courts to correct judgments in respect to clerical mistakes, even after the expiration of the term of the court. But the power of the State courts, as has already been pointed out, is wider in this respect, extending to matters of substance, in naturalization as well as in other proceedings. This broader power of the State tribunals has been recognized, by implication, in *Matter of Perkins* (204 Fed. 350), as well as specifically in the decisions of courts of New York and other States. (*Matter of Nigri*, 32 Misc. 392.) As has been said in *Macolusco's Naturalization* (237 Penn. St. 132, 138): " the power to correct and purge its records is inherent in every State court of general jurisdiction, and it may be exercised in the case of the naturalization of an alien as well as in any other case in which it has jurisdiction to act." So that even if the change sought to be authorized is a material one, this court has inherent power to

direct it. But *Matter of Hennig (supra)* would seem to support my conclusion that only a clerical change is asked. In that case the applicant sought to change the record to show the correct date of his birth as 1874 instead of 1879, and to supply the omission of the name of a minor child. In granting the application Judge CHAT-FIELD said: " It has been the established rule of the courts in this circuit that an order admitting a person to citizenship could not be subsequently changed or amended by the same court, or another judge holding the court at a different term. The order has been treated as a judgment in this respect, *but purely clerical mistakes can be corrected, even in a judgment (Johannesen v. United States,* 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066), *or in any paper comprised in the record. A person admitted to citizenship can at any time apply to the court to have an additional paper filed, correcting a mistake in some other paper, which does not affect the judgment."* (Italics mine.)

The court also allowed the insertion of the name of the minor child, which had been omitted by the father from the petition and the certificate of naturalization, and directed the affidavits and exhibits to be filed with the papers and a new naturalization certificate to be issued showing the true facts, upon surrender of the old certificate.

It is equally true that there are instances where the courts will refuse to make even clerical changes *nunc pro tunc,* because, as Mr. Justice McADAM said in *Matter of Nigri (supra),* such correction is to be allowed solely to make the record as it existed *at the time of naturalization,* a truthful one. And accordingly he denied an application to amend a certificate of naturalization so as to show the new name of the applicant which he had been allowed to assume subsequent to the time when citizenship was conferred upon him. The sole reason why the application was refused was that the amendment would not truthfully set forth the situation as it existed at the time of the grant of the certificate. This was also the reason for the denial in *Matter of Perkins (supra)* so largely relied upon by the Director. In this connection too, I have a very definite opinion, but as the present application does not bring up these questions, it may be as well, perhaps, not to venture to discuss them.

The case of *U. S. v. Vogel* (262 Fed. 262), cited in opposition, involved an application for an amendment of a nature which seemingly went to the jurisdiction. In that case the applicant who had forsworn allegiance to the wrong sovereignty sought to have the mistake corrected. This change the court very properly refused to make because the statute specifically provided that the

alien should renounce allegiance at a certain and appropriate time, " particularly by name to the prince, potentate, state, or sovereignty of which he at the time of filing of his petition may be a citizen or subject." The applicant's failure to name the correct sovereignty would leave him in a position where he would still appear to be owing allegiance to the former country, while claiming American citizenship. It is perfectly evident that an application for an amendment of this nature is radically different from the petition before me.

In the instant case, in the event of the denial of this application, the petitioner would be wholly without adequate remedy. True, as the Director of Naturalization suggests, the child whose age has been misstated in the naturalization proceedings might still rest his claim to citizenship upon his birth certificate showing his minority at the time of his father's naturalization. But I see no reason for placing such child in the precarious position of being subjected to the continual necessity of establishing his rights and to possible danger of vexatious attacks. Such a situation would be intolerable and a gross injustice to an innocent victim of a purely clerical mistake. As Judge CHATFIELD has pointed out, it would be impossible now for the son to be again naturalized, for he cannot forswear allegiance to another sovereign while apparently a citizen of the United States. For practical purposes he would be a man without a country, unless, in exercising the privileges of citizenship, he chose to place himself at the mercy of possible bureaucratic officials. This is precisely what the suggestion of the District Director of Naturalization, in the following language, involves: " It is contended that any official before whom he presents himself as a citizen should be free to require such proof as may be necessary if the presentation of the birth certificate is not deemed sufficient." It is unnecessary to add that such a requirement would be unfair and oppressive in the highest degree, and would make the court subordinate to mere ministerial officials.

This application should be granted not alone as a matter of sound discretion, but as a matter of right, so as to set forth a truthful record of the facts as they existed at the time of the issue of the original certificate of naturalization and so as to secure the son of the applicant in the peaceful exercise of the rights and privileges of citizenship, without the possibility of inquisitorial disturbance, even if that be remote. Settle order on notice to the county clerk and the District Director of Naturalization.